

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 14, 2025**

_____

**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **In re:** | § Chapter 11 |
| | § |
| | § Case No. 25-90010 |
| **GROFF TRACTOR MID ATLANTIC, LLC, *et al.* ** | § |
| | § (Jointly Administered) |
| | § |
| **Debtors.**[1] | § |
| | § |
| | § |

## ORDER (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (B) PROCEDURES FOR THE REVIEW AND APPROVAL OF SUCH TRANSACTIONS, AND (C) ASSUMPTION AND ASSIGNMENT PROCEDURES; (II) APPROVING BID PROTECTIONS; (III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO; (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (V) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (VI) GRANTING RELATED RELIEF

---

[1]	The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: Groff Tractor Mid Atlantic, LLC (7629), Dealer 2023, LLC (3275), and Groff Tractor Holdings, LLC (0486), and the location of the service address for the Debtors is: 1460 Main Street, Suite 200, Southlake, TX 76092.

1

Upon the motion, (Docket No. 100) (the "Motion")[2], of Groff Tractor Mid Atlantic, LLC ("GTMA"), Dealer 2023 LLC ("Dealer"), and Groff Tractor Holdings, LLC ("Holdings", and collectively with GTMA and Dealer, the "Debtors") as debtors and debtors in possession (collectively, "Debtors") pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Bankruptcy Rules, and Rules 2002-1 and 9013-1 of the Local Rules, for entry of an order (the "Bidding Procedures Order") (i) approving (a) the Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**; (b) the procedures for the review and approval of sales; and (c) the assumption and assignment procedures; (ii) approving bid protections; (iii) scheduling certain dates with respect thereto; (iv) approving the form and manner of notice thereof; (v) approving the sale of certain of the Debtors' Assets free and clear of liens, claims, interests, and encumbrances; and (vi) granting related relief; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing (the "Bidding Procedures Hearing") to consider the relief requested in the Motion; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.

proceedings had before this Court and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.     <u>Statutory and Legal Predicates</u>.  The predicates for relief granted herein are sections

105, 363, 365, 503, and 507 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9007, 9008 and 9014

of the Bankruptcy Rules, and Rules 2002-1 and 9013-1 of the Local Rules.

B.     <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient business

reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair,

reasonable, and appropriate.  The Bidding Procedures are reasonably designed to promote a

competitive and robust bidding process to generate the greatest level of interest in the Debtors'

businesses resulting in the highest or otherwise best offers.

C.     <u>Restructuring Committee</u>.  The Debtors have articulated good and sufficient business

reasons for the Court to approve the constitution of the Restructuring Committee and approve rights

and responsibilities of the Restructuring Committee, including the review and approval procedures of

the Restructuring Committee, as set forth herein.

D.     <u>Good Faith Negotiations</u>.  The Bidding Procedures, including the attendant

Restructuring Committee procedures, were negotiated in good faith and at arms' length and are

reasonably designed to promote participation and active bidding and ensure that the highest or best

value is generated for the Debtors' assets.

E.     <u>Assumption and Assignment Procedures</u>.  The Debtors have articulated good

and sufficient business reasons for the Court to approve the Assumption and Assignment

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

Procedures.  The Assumption and Assignment Procedures, including the form of Sale Notice attached hereto as **Exhibit 2** and the form of Cure Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate opportunity for all Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

F.    Cure Notice.   The Cure Notice, the form of which is attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

G.    Notice.  All other notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notice to all parties in interest of all matters pertinent hereto. No further notice is or shall be required.

H.    Relief is Warranted.  The legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

2.    The Debtors are authorized to implement the Bidding Procedures in accordance with the following timeline (as may be modified in accordance with the Bidding Procedures):

| Key Event | Deadline |
|---|---|
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **November 14, 2025** |
| Deadline to Provide Draft Form of Purchase Agreement in Dataroom | **November 17, 2025** |
| Deadline to Submit Non-Binding Letter of Intent (the "LOI Deadline") | **November 25, 2025** |
| Suggested Deadline for OEM LOI parties to return Dealership Application Packages (the "OEM Dealer Application Date")<br><br>Suggested Deadline for LOI parties to return Floorplan Applications (the "FFF Application Date") | **November 25, 2025** |
| Deadline to Designate Stalking Horse Bid(s) | **December 8, 2025** |
| Deadline to Object to Designation of any Stalking Horse Bidder or Grant of Bid Protections | **Four (4) business days following filing of the applicable Stalking Horse Notice** |
| Deadline to Object to Cure Costs; Rights Objection; Assignment Objection | **December 1, 2025** |
| Deadline to Submit Bids ("Bid Deadline") | **December 14, 2025 at 5:00 p.m. (CT)** |
| Deadline to Remit Deposit for Bids | **December 15, 2025 at 12:00 p.m. (CT)** |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **December 15, 2025** |
| Auction, if necessary, to be conducted at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP (Fort Worth, Texas), and (ii) virtually, pursuant to procedures to be announced to bidders | **December 16, 2025 (at a time to be announced)** |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as reasonably possible following conclusion of Auction** |
| Deadline to File Objections to (a) Sale Transactions (other than the Applicable Sale Transaction) and (b) Adequate Assurance of Future Performance ("Sale Objection Deadline") | **December 17, 2025 at 5:00 p.m. CT** |
| Sale Hearing | **December 18, 2025 at 10:00 a.m. CT** |
| Outside Closing Date | **January 9, 2026** |

3.      Subject to the terms of this Order, the Bidding Procedures, and any Applicable

Stalking Horse Agreement, the dates and deadlines set forth in this Order are subject to

modification by the Debtors and upon proper notice to parties in interest, without further order of

this Court.

## BIDDING PROCEDURES

4.      The Bidding Procedures, attached hereto as **Exhibit 1**, are hereby approved.

5.      The Bidding Procedures are incorporated herein by reference and shall govern the bids and proceedings related to the sale of the Debtors' businesses and assets, including, but not limited to, the applicable Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  If there is any conflict between the terms of this Order and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

6.      The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a Qualified Bid, are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and all parties in interest.

7.      All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids (except as permitted by the Debtors), or (iii) taking any other action intended to prevent a transparent and competitive auction process.

8.      Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (y) it has not engaged in any of the foregoing prohibited actions and (z) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.  Notwithstanding the foregoing, certain joint bids may be permitted in accordance with the Bidding Procedures.

9. A committee consisting of David Rex (the Debtors' manager, "Rex"), Michael Juniper (the Debtors' CRO, "Juniper"), and Robin Phelan ("Phelan") (together, the "Restructuring Committee"), will review each Qualified Bid to determine, in consultation with the Consultation Parties, which Bids shall constitute Qualified Bid and which Qualified Bids shall constitute the Successful Bid (or Successful Bids, as applicable). The Restructuring Committee shall abide by the following protocols in reviewing and designating Successful Bid(s):

a. *Each Bid will be reviewed by Juniper, Rex, and Phelan to determine, determine, in consultation with the Consultation Parties, whether such Bid constitutes a Qualified Bid.*

b. *Consistent with the terms of the Bidding Procedures, Qualified Bids shall be entitled to participate in the Auction.*

c. *At the conclusion of the Auction, Juniper, Rex, and Phelan shall determine, in consultation with the Consultation Parties, which Qualified Bid (or Qualified Bids, as applicable) constitutes the highest or otherwise best offer(s).*

d. *If the determination of Juniper and the determination of Rex, after consultation with the Consultation Parties, identify the same Qualified Bid (or Qualified Bids, as applicable) as the highest or otherwise best offer, such Qualified Bid (or Qualified Bids, as applicable) shall be announced as the Successful Bidder(s).*

e. *If, after consultation with the Consultation Parties, the determination of Juniper and the determination of Rex identify different Qualified Bids as the highest or otherwise best offer, then Phelan shall cast a determining, tie-break vote, and the resultant Qualified Bid (or Qualified Bids, as applicable) shall be announced as the Successful Bidder(s).*

f. *Phelan shall be entitled to participate in all discussions regarding the Bids and Qualified Bids and review Bids and Qualified Bids as received.*

g. *Robin Phelan shall be entitled to attend the Auction.*

h. *The Restructuring Committee shall also be authorized to consult with the Debtors' financial and legal advisors regarding the terms and structure of the Bids, and may request supplemental information from any Bidder.*

    *i.   The Committee, the Debtors' secured lenders (including CNH Capital) and CASE shall also be authorized to consult with the Debtors' financial and legal advisors regarding the terms and structure of the Bids, and may request supplemental information from any Bidder.*

    *j.   The Restructuring Committee shall also be required, in consultation with the Consultation Parties, to approve the designation of any Bid as a Stalking Horse Bid, and any Bidder as a Stalking Horse Bidder consistent with the procedures set forth above.*

    *k.   The Restructuring Committee shall act in a fiduciary capacity to the Debtors' estates and shall evaluate Bids solely on criteria set forth in the Bidding Procedures.*

10.    The Consultation Parties shall also be authorized to consult with the Debtors' financial and legal advisors regarding the terms and structure of the Bids, and may request that the Debtors and their advisors request supplemental information from any Bidder, with such supplemental material to be shared with such requesting Consultation Party.

11.    The Debtors are authorized to take all reasonable actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Order and the Bidding Procedures.

## STALKING HORSE DESIGNATION

12.    The Debtors are authorized, in the exercise of their reasonable business judgment, with the requisite approval and support of the Restructuring Committee as set forth herein, and after consultation with the Consultation Parties and subject to the notice requirements and objection procedures, to: (a) select one or more Potential Bidders to act as stalking horse bidders in connection with a Sale (each, a "Stalking Horse Bidder") and enter into a purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, offer, after consultation with the Consultation Parties or as otherwise approved by the

8

Court, (i) a breakup fee, payable in the event the Debtors consummate a transaction with a Bidder other than the Stalking Horse Bidder for the assets sought to be purchased through the Stalking Horse Bid (the "Breakup Fee"), (ii) to reimburse reasonable and documented out-of-pocket fees and expenses of the Stalking Horse Bidder incurred in negotiating the Stalking Horse Agreement and investigating the Debtors and the applicable Assets (the "Expense Reimbursement") and/or (iii) to provide other appropriate and customary protections (together with the Breakup Fee and the Expense Reimbursement, the "Bid Protections"); *provided that*, with respect to any particular Stalking Horse Agreement, the total Bid Protections offered shall not exceed (A) 2.5% of the cash purchase price contemplated by such Stalking Horse Agreement for the Breakup Fee plus (B) $50,000 for any Expense Reimbursement.

13.     No later than one (1) business day after selecting a Stalking Horse Bidder, the Debtors shall file with the Court and serve a notice (a "Stalking Horse Notice") (a) identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price and Assets subject to such Stalking Horse Bid), and the amount and terms of any Bid Protections offered to the Stalking Horse Bidder, and (b) attaching a copy of the relevant Stalking Horse Agreement. Any objection to the designation of the Stalking Horse Bidder or to the Bid Protections set forth in the Stalking Horse Notice and Stalking Horse Agreement (a "Stalking Horse Objection") shall be filed no later than the date that is four (4) business days after the date of service of the applicable Stalking Horse Notice. If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections provided for under such Stalking Horse Agreement shall not be deemed approved unless approved by separate order of the Court. If no Stalking Horse Objection is timely filed and served with respect to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved

9

without further order of the Court upon the expiration of four (4) business days after service of the Stalking Horse Notice, and shall be payable in accordance with, and subject to the terms of, the applicable Stalking Horse Agreement.

**OBJECTIONS TO SALE TRANSACTIONS**

14.    The objection deadline for the Sale Transactions will be **December 17, 2025 at 5:00 p.m. CT** (the "Sale Objection Deadline").

15.    Objections to the applicable Sale Transaction (each, a "Sale Objection"), must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and, to the extent applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; and (iv) conform to the Bankruptcy Rules and the Local Rules. In addition, subject to the terms of this Order and the Bidding Procedures, the Debtors may, after consultation with the Consultation parties, extend any objection date specified in the applicable notice, as the Debtors deem appropriate in the exercise of their reasonable business judgment in consultation with the Successful Bidder(s), as applicable. If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Court at the applicable Sale Hearing.

16.    An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

17.     Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any Sale Objection to the applicable sale, or to the consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' businesses to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code.  Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code.

## SALE NOTICE

18.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the Sale Transactions, the applicable Auction, the applicable Sale Hearing, or the Sale Objection Deadline shall be required if the Debtors serve and publish such notice in the manner provided in the Bidding Procedures and this Order.  The Sale Notice contains the type of information required under Bankruptcy Rule 2002 and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules. Service of the Sale Notice as described above shall be good and sufficient notice of the Sale Transactions and the Assumption and Assignment Procedures with respect to known interested parties.

19.     Notice of the Sale Objection Deadline is reasonable and appropriate under the circumstances, fair to all Contract Counterparties, complies in all respects with the Bankruptcy Code, and is approved.

20.     The Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases and other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use

permits or agreements), free and clear of all liens, claims, interests, and encumbrances. Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right"), then such party must file with the Bankruptcy Court, via ECF, an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than December 1, 2025.

21.     In addition, the Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right"). Subject to approval by the Bankruptcy Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Bankruptcy Court, via ECF, an objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than the December 1, 2025.

22.     If a party files an Assignment Objection or Rights Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be heard by the Bankruptcy Court at the Sale Hearing or such other scheduled hearing.

23.     Any person failing to timely file an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights, and from asserting any alleged Preferential Purchase Rights with respect to a Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests,  and encumbrances,  including Consent Rights  and Preferential Purchase  Rights, regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.

24.     If any person files an Assignment Objection or Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party).  Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted.  Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objection, and all such rights of the Debtors are expressly preserved.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

25.     The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, and are approved.

26.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.

27.     The Cure Notice, including any Supplemental Cure Notice (as defined below), is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' proposed assumption and assignment of the Assigned Contracts in connection with the Sale Transactions and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Order.

28.     On or before **November 14, 2025**, the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties.  Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the proposed Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.  As soon as reasonably practicable after filing the Cure Notice, the Debtors shall post a copy of the Cure Notice on Epiq's Website.

29.     In accordance with the Bidding Procedures, each Bid must contain such financial and other information that allows the Debtors to make a reasonable determination as to the

Potential Bidder's financial and other capabilities to consummate a sale transaction including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party (such information, "Adequate Assurance Information").

30.     The Debtors shall provide, or cause to be provided, to applicable Contract Counterparties Adequate Assurance Information on a strictly confidential basis once a Potential Bidder is deemed a Qualified Bidder. Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether the adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any Adequate Assurance Objection (as defined herein) filed by the Contract Counterparty; *provided, that,* if a Contract Counterparty seeks to disclose confidential, non-public information included in the Adequate Assurance Information, it shall request Court authority to redact such information, unless disclosure of such confidential, non-public information is authorized by the Debtors, the Successful Bidder, and any known proposed assignee(s) of the relevant Assigned Contracts (if different from the Successful Bidder), or ordered by the Court.

31.     Objections, if any, to any proposed Cure Costs (each, a "Cure Objection") and to the provision of adequate assurance of future performance (each, an "Adequate Assurance Objection") must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and, to the extent applicable, provide proposed language that, if accepted and

incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court.

32.     Any Cure Objection or Adequate Assurance Objection in respect of a proposed Assigned Contract must be filed by the Sale Objection Deadline.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the applicable Sale Hearing or such other hearing scheduled prior to any scheduled closing of the Applicable Sale Transaction.

33.     If a Cure Objection or Adequate Assurance Objection cannot otherwise be resolved by the parties, the Debtors may, after consultation with the applicable Successful Bidder(s), assume and assign the Contract(s) or Lease(s) pending resolution of the Cure Objection.

34.     If (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts or leases not previously included on the Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "Supplemental Cure Notice," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).  As soon as reasonably practicable after filing a Supplemental Cure Notice, the Debtors shall post a copy of the Supplemental Cure Notice on Epiq's Website.  Any Cure Objection with respect to Cure Costs set forth in a Supplemental Cure Notice or any Adequate Assurance Objection with respect to the provision of adequate assurance of future performance must be filed within seven (7) days of filing of that Supplemental Cure Notice.

35.     If no timely Cure Objection is filed in respect of an Assigned Contract, the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, and a Successful Bidder.

36.     If no timely Adequate Assurance Objection is filed with respect to an Assigned Contract or a Successful Bidder, the Debtors will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code and the Contract Counterparty shall forever be barred from asserting against the Debtors, their estates, and a Successful Bidder, any additional obligation to provide adequate assurance of future performance.

37.     Further, if no timely Cure Objection or Adequate Assurance Objection is filed with respect to an Assigned Contract, the relevant Contract Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder.

38.     If no objection is timely received with respect to an Assigned Contract (the "Contract Objection"): (i)  the Contract Counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code section 365(b)(1)(A) and upon payment of the Cure Costs set forth in the Cure

Notice for such Assigned Contract; and (iii) the Contract Counterparty shall be forever barred from asserting any other claims related to such Assigned Contract against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving such Contract Objection and any sale order.

39. Absent entry of an order approving an applicable Sale Transaction, the Assigned Contracts shall not be deemed assumed or assigned and shall in all respects be subject to further administration under the Bankruptcy Code.

40. The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved). The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

**<u>RESERVATION OF RIGHTS</u>**

41. Except as otherwise set forth in the Bidding Procedures, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, in consultation with the Consultation Parties, to modify the Bidding Procedures; waive terms and conditions set forth in the Bidding Procedures with respect to all Potential Bidders; extend the deadlines set forth in the Bidding Procedures; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth in the Bidding Procedures; *provided*, *that*, any modifications shall not be inconsistent with this Order or any other order of the Bankruptcy Court and shall not modify the consent or consultation rights

of any party; *provided*, *further*, that any modifications shall not affect the rights of Qualified Bidders in respect of their Good Faith Deposits as set forth in the Bidding Procedures under the heading "Good Faith Deposit." Subject to the foregoing, the Debtors may provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' businesses, in each case, to the extent not materially inconsistent with the Bidding Procedures and this Order. All parties reserve their rights to seek Bankruptcy Court relief, including on an expedited basis, with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

## FIDUCIARY OUT

42.     Nothing in the Bidding Procedures will require the Debtors, their managers, CRO, board of managers, or such similar governing body of a Debtor, or the Restructuring Committee, to take any action, or to refrain from taking any action, with respect to the Bidding Procedures, to the extent that any Debtor or such manager, CRO board of managers, Restructuring Committee, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law (the "Fiduciary Out").

## GENERAL PROVISIONS

43.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any sale transaction) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

44. The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

45. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, or any applicable provisions of the Local Rules or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

46. The Debtors are authorized to take all reasonable steps necessary or appropriate to carry out the relief granted in this Order.

47. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

### ### END OF ORDER ###

Order submitted by:

**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua N. Eppich (Texas Bar No. 24050567)
Ken Green (Texas Bar No. 24036677)
Eric T. Haitz (Texas Bar No. 24101851)
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: ken.green@bondsellis.com
Email: eric.haitz@bondsellis.com

*Proposed Counsel for*
*Debtors and Debtors-in-Possession*

**EXHIBIT 1**

**"Bidding Procedures"**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| | § | **Chapter 11** |
| **In re:** | § | |
| | § | **Case No. 25-90010** |
| **GROFF TRACTOR MID ATLANTIC, LLC,** *et al.* | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **Debtors.**[1] | § | |
| | § | |

**BIDDING PROCEDURES**

## OVERVIEW

On October 14, 2025, Groff Tractor Mid Atlantic, LLC ("GTMA"), Dealer 2023 LLC ("Dealer") and Groff Tractor Holdings, LLC ("Holdings," and collectively with GTMA and Dealer, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"). These chapter 11 cases (the "Chapter 11 Cases") have been consolidated for administrative/procedural purposes under the lead case: Case No. 25-90010; *In re Groff Tractor Mid Atlantic, LLC, et al.*

On [●], 2025, the Bankruptcy Court entered an order (ECF No. [●]) (the "Bidding Procedures Order"), which, among other things, approved these procedures (the "Bidding Procedures") pursuant to which the Debtors may solicit the highest or otherwise best Bids (or any combination of Partial Bids comprising one Qualified Bid) for the Debtors' businesses and assets on the terms and conditions set forth herein.[2]

The Bidding Procedures describe, among other things: (i) the procedures for bidders to submit bids for an investment in, or other acquisition of, the Debtors' businesses or assets, subject to an order of the Bankruptcy Court approving such potential sale transactions; (ii) the procedures for the Debtors to select one or more Stalking Horse Bidders and grant Bid Protections; (iii) the manner in which bidders and bids become Qualified Bidders and Qualified Bids, respectively; (iv) the process for negotiating the bids received; (v) the conduct of the Auction if the Debtors receive more than one Qualified Bid; (vi) the procedure for the ultimate selection of any Successful Bidder and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: Groff Tractor Mid Atlantic, LLC (7629), Dealer 2023, LLC (3275), and Groff Tractor Holdings, LLC (0486), and the location of the service address for the Debtors is: 1460 Main Street, Suite 200, Southlake, TX 76092.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.

1

any Back-Up Bidder; and (vi) the process for approval of the Sale Transactions at the applicable Sale Hearing (each as defined herein).

## RESERVATION OF RIGHTS

**Except as otherwise set forth herein, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to modify these Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; *provided*, *that*, except for extensions of any deadlines, any modifications shall not be inconsistent with the Bidding Procedures Order, or any other order of the Bankruptcy Court and shall not modify the consent or consultation rights of any party, including the Consultation Parties and the Restructuring Committee, and shall not constitute a material modification absent Court approval after notice to the Consultation Parties; *provided*, *further*, that any modifications shall not affect the rights of Qualified Bidders in respect of their Good Faith Deposits as set forth in these Bidding Procedures under the heading "Good Faith Deposit." Subject to the foregoing, the Debtors may, in consultation with the Consultation Parties, provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' businesses, in each case, to the extent not materially inconsistent with these Bidding Procedures and the Bidding Procedures Order. Subject to each party's respective standing rights, all parties reserve their rights to seek Bankruptcy Court relief, including on an expedited basis, with regard to the Auction, these Bidding Procedures, and any related items (including, if necessary, to seek an extension of the any deadlines set forth in the Bidding Procedures). The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.**

## FIDUCIARY OUT

Nothing in these Bidding Procedures will require the Restructuring Committee, board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent the Restructuring Committee, such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law (the "Fiduciary Out").

## SUMMARY OF IMPORTANT DATES

| Key Event | Deadline |
|---|---|
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **November 14, 2025** |
| Deadline to Provide Draft Form of Purchase Agreement in Dataroom | **November 17, 2025** |

2

| | |
|---|---|
| Deadline to Submit Non-Binding Letter of Intent (the "LOI Deadline") | **November 25, 2025** |
| Suggested Deadline for OEM LOI parties to return Dealership Application Packages (the "OEM Dealer Application Date")<br><br>Suggested Deadline for LOI parties to return Floorplan Applications (the "FFF Application Date") | **November 25, 2025** |
| Deadline to Designate Stalking Horse Bid(s) | **December 8, 2025** |
| Deadline to Object to Designation of any Stalking Horse Bidder or Grant of Bid Protections | **Four (4) business days following filing of the applicable Stalking Horse Notice** |
| Deadline to Object to Cure Costs; Rights Objection; Assignment Objection | **December 1, 2025** |
| Deadline to Submit Bids ("Bid Deadline") | **December 14, 2025 at 5:00 p.m. (CT)** |
| Deadline to Remit Deposit for Bids | **December 15, 2025 at 12:00 p.m. (CT)** |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **December 15, 2025** |
| Auction, if necessary, to be conducted at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP (Fort Worth, Texas), and (ii) virtually, pursuant to procedures to be announced to bidders | **December 16, 2025 (at a time to be announced)** |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as reasonably possible following conclusion of Auction** |
| Deadline to File Objections to (a) Sale Transactions (other than the Applicable Sale Transaction) and (b) Adequate Assurance of Future Performance ("Sale Objection Deadline") | **December 17, 2025 at 5:00 p.m. CT** |
| Sale Hearing | **December 18, 2025 at 10:00 a.m. CT** |
| Outside Closing Date | **January 9, 2026** |

## BUSINESSES TO BE ACQUIRED

The Debtors' businesses consist of CASE® Construction Equipment Dealerships located in New Jersey, Delaware, Maryland, and Pennsylvania. The Debtors also market, sell, and lease equipment from certain other original equipment manufacturers.

Parties may submit bids for one or more of the Debtors' business locations, including for all or part of the Debtors' businesses (each, a "Partial Bid"), which bids may be combined with other Partial Bids or be considered independently together with the liquidation value (as reasonably determined by the Debtors in good faith) of the Debtors' businesses or assets that are not the subject of a Partial Bid to be deemed a Qualified Bid.

3

## DUE DILIGENCE

The Debtors have posted copies of all material documents related to the Debtors' businesses and assets to the Debtors' confidential electronic data room (the "Data Room").  To access the Data Room, a party must submit to the Debtors' advisors:

(A)    an executed confidentiality agreement in form and substance that is reasonably satisfactory to the Debtors (unless such party is already a party to an existing customary confidentiality agreement with the Debtors that is acceptable to the Debtors for this due diligence process, in which case such agreement shall govern); and

(B)    sufficient information, as reasonably determined by the Debtors, to allow the Debtors and Restructuring Committee to determine, in their reasonable business judgment, in consultation with the Consultation Parties (as defined herein), that the interested party (i) has the financial wherewithal to consummate the Sale Transactions, and (ii) intends to access the Data Room for a bona fide purpose consistent with these Bidding Procedures.

An interested party that meets the aforementioned requirements to the reasonable satisfaction of the Debtors (as determined after consultation with the Consultations Parties, as defined herein) shall be a "Potential Bidder."  As soon as practicable, the Debtors will provide such Potential Bidder access to the Data Room; *provided, that,* such access may be terminated by the Debtors in their reasonable discretion at any time for any reason whatsoever, in consultation with Consultation Parties (as defined herein), including that a Potential Bidder does not become a Qualified Bidder, these Bidding Procedures are terminated, the Potential Bidder breaches any obligations under its confidentiality agreement or the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.  The Debtors may restrict or limit access of a Potential Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment and in consultation with the Consultation Parties, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to such Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate the Sale Transactions.

Until the Bid Deadline, and except as otherwise provided herein, the Debtors will provide any Potential Bidder with reasonable access to the Data Room and any additional information requested by Potential Bidders (subject to any restrictions pursuant to applicable law or these Bidding Procedures) that the Debtors believe in their reasonable business judgment to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to David Felts, Managing Director of TM Capital (dfelts@tmcapital.com).  In the event that any such additional information is in written form and provided to a Potential Bidder, the Debtors shall simultaneously provide such additional information to all other Potential Bidders by posting it in the Data Room.  Unless prohibited by law or otherwise determined by the Debtors in consultation with the Consultation Parties, the availability of additional due diligence to a Potential Bidder may be terminated if (i) the Potential Bidder does not become a Qualified Bidder, (ii)

these Bidding Procedures are terminated, (iii) the Potential Bidder breaches any obligations under its confidentiality agreement, or (iv) the Debtors become aware that information submitted by the Potential Bidder for requesting access to the Data Room is inaccurate or misleading.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors' businesses or assets to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth herein, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors, in the reasonable business judgment of the Debtors after consulting with the Consultation Parties.

Each Qualified Bidder shall be deemed to acknowledge and represent (i) that it has had an opportunity to (x) conduct any and all due diligence regarding the business and/or assets to be acquired by such bidder (the "Applicable Acquired Assets") prior to making a bid and (y) investigate and/or inspect any documents and the Applicable Acquired Assets in making its bid; (ii) that it has relied solely upon its own independent review in making its bid; and (iii) that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties of any kind or character and from any source whatsoever, whether express, implied, by operation of law or otherwise regarding the Applicable Acquired Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures. The Debtors and their respective estates are not responsible for, and will have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with these Bidding Procedures and the Sale Transactions.

CNH Industrial America, LLC ("CASE") shall be permitted to provide references to TM Capital of the names and contact information of parties potentially interested in purchasing all or any portion of the Debtors' businesses. In the event any third party contacts CASE to discuss the potential interest in purchasing all or any portion of the Debtors' businesses, CASE shall be permitted to provide TM Capital's contact information, as set forth below, to such potentially interested party.

## NON-BINDING LETTERS OF INTENT

Parties interested in purchasing all or any portion of the Debtors' businesses must submit Letter of Intent interest to the Debtors by the LOI Deadline in writing (each, a "Non-Binding Letter of Intent"). Non-Binding Letters of Intent should be sent to:

| Bonds Ellis Eppich Schafer Jones | TM Capital | Pachulski Stang Ziehl & Jones |
|---|---|---|
| Joshua Eppich joshua@bondsellis.com Eric T. Haitz eric.haitz@bondsellis.com Ken Green ken.green@bondsellis.com | David Felts Managing Director of TM Capital dfelts@tmcapital.com | Bradford J. Sandler bsandler@pszjlaw.com Malhar Pagay mpagay@pszjlaw.com |

Each Non-Binding Letter of Intent shall clearly indicate whether it intends to become a CASE dealer or a dealer of any other OEM post-closing if it is the Successful Bidder ("OEM LOI").

Submitting a Non-Binding Letter of Intent by the deadline listed herein does not obligate the interested party to consummate a transaction, or to submit a formal bid or to participate in the bidding process, nor does it cause such party to be deemed to be a Potential Bidder. It also does not exempt such party from having to submit a Qualified Bid by the Bid Deadline (as defined below) or comply with these Bidding Procedures to participate in any subsequent Auction, all as described below. For the avoidance of doubt, a party that does not submit a Non-Binding Letter of Intent is not precluded from submitting a Qualified Bid by the Bid Deadline.

## **OEM DISCUSSIONS**

To provide as much lead time as possible, bidders are strongly encouraged to engage in discussions with CASE and other original equipment manufacturers (together, the "OEMs")with whom the Debtors have any dealer agreements or similar contracts during the LOI phase of the Bidding Procedures. In the ordinary course of their diligence process, it is anticipated that OEMs may be required to share confidential and proprietary information with Potential Bidders for which OEMs may each require a nondisclosure and confidentiality agreement to be signed for each OEM LOI party seeking to become a dealer of such OEM products post-closing.

1. True and correct, unredacted copies of all OEM LOIs shall be provided to any requesting OEM whose products or dealer arrangement is relevant to such OEM LOI no later than the OEM LOI Deadline.

2. Subject to the OEM Discussion provisions below, beginning immediately, each OEM shall be permitted to communicate directly with any party that submitted an OEM LOI relevant to each such OEM's products or dealer arrangement, specifically including (without limitation) in-person meetings.

3. The Debtors will facilitate a process to introduce Potential Bidders to OEMs related to any contractual rights of each OEM upon the following terms (the "OEM Discussions"):
   a. Each OEM shall deliver written notice and an invitation to TM Capital or CR3 Partners to join any call or meeting between (i) any OEM individual sitting on a decision board with respect to any dealer agreements or similar contracts and (ii) a Bidder or Potential Bidder where such call or meeting is scheduled to occur more than 24 hours later than the creation/scheduling of such scheduled call or meeting.
   b. Each OEM shall invite TM Capital and/or CR3 Partners to any in-person meeting with any Bidder or Potential Bidder. TM Capital and/or CR3 may attend via telephonic attendance.
   c. Each OEM shall have weekly calls with CR3 and/or TM Capital for such OEM to provide an overview of communications with Bidders or Potential Bidders from the prior week.
   d. At the option of the Debtors, in consultation with the Consultation Parties, the TM Capital and/or CR3 may schedule an OEM meeting day to coordinate and rotate virtual meetings between Bidders and/or OEM LOI parties, which meetings the Debtors may facilitate and participate in. No OEM is required to attend any such meeting day.

6

4. Subject to the OEM Discussion requirements, OEMs shall be permitted to request additional information and documentation from any party that submitted an OEM LOI (i) for the purpose of evaluating such party's qualifications to serve as a dealer for such OEM, specifically including (without limitation) such OEM's dealership application package, including any OEM nondisclosure agreement ("Dealership Application Package"). Each participating OEM shall provide TM Capital with its respective Dealership Application Package. TM Capital is permitted to deliver each such Dealership Application Package to any party reasonably expected to submit an OEM LOI. On the same day of the delivery, TM Capital shall provide the respective OEM the name and contact information for any party to whom TM Capital delivered the relevant Dealership Application Package.

5. Any party wishing to have any OEM contracts assigned under 11 U.S.C. 365 is encouraged to deliver to each respective OEM a fully completed Dealership Application Package, together with all documents and related diligence ancillary thereto, no later than the OEM Dealer Application Date.

6. Subject to the OEM Discussion requirements, to the extent deemed necessary, OEMs may seek additional information and follow-up discussions and meetings with any Potential Bidder delivering an OEM LOI.

   Notwithstanding the deadlines and Sale milestones set forth herein, ***failure to timely submit an OEM LOI and/or timely submit any Dealership Application Package may significantly impact the timing of each applicable OEM's approval process***.

7. All parties reserve all rights. The Debtors, CASE and CNH Capital, respectively, shall be entitled to seek relief from the Bankruptcy Court on an emergency basis against any party who allegedly fails to comply with these provisions.

Each OEM will treat each LOI party, Potential Bidder, and Bidder similarly during any due diligence process conducted with any LOI party, Potential Bidder, and Bidder. Each OEM is prohibited from disclosing any details regarding any LOI, Potential Bidder, Bidder, or Bid, (including, without limitation, their name, bid, or financial information) to any other Bidder or Potential Bidder.

## FLOOR PLAN FINANCER DISCUSSIONS

To provide as much lead time as possible, bidders are strongly encouraged to engage in discussions with CNH Capital America, LLC ("CNH Capital") and other existing or potential floor plan financers (together, the "FFFs") with whom the Debtors have existing or historical floorplan financing facilities. In the ordinary course of its diligence process, it is anticipated that FFFs may require a nondisclosure and confidentiality agreement to be signed for each LOI party seeking approval for financing from any FFF.

1. Promptly following the FFF Application Date, true and correct contact information for each relevant LOI party shall be provided to the relevant FFFs from whom respective LOI parties may seek financing. Corresponding FFF contact information will be provided to

LOI parties.

2.  Subject to the FFF Discussion provisions below, beginning immediately, each FFF shall be permitted to communicate directly with any party that submitted an LOI relevant to each such FFF's floorplan financing for the purpose of determining underwriting eligibility.

3.  The Debtors will facilitate a process to introduce Potential Bidders to FFFs relevant to an LOI upon the following terms(the "FFF Discussions"):
    a.  Each FFF shall invite TM Capital and/or CR3 Partners to any in-person meeting with any Bidder or Potential Bidder.  TM Capital and/or CR3 may attend via telephonic attendance.
    b.  Each FFF shall have weekly calls with CR3 and/or TM Capital for such OEM to provide an overview of communications with Bidders or Potential Bidders from the prior week.
    c.  At the option of the Debtors, in consultation with the Consultation Parties, the TM Capital and/or CR3 may schedule an FFF meeting day to coordinate and rotate virtual meetings between Bidders and/or FFF LOI parties, which meetings the Debtors may facilitate and participate in.  No FFF is required to attend any such meeting day.

4.  Subject to the FFF Discussions requirements, FFFs shall be permitted to request additional information and documentation from any party that submitted an LOI and is seeking financing from such FFF.

5.  Any party wishing to obtain financing from any FFF is encouraged to deliver to each applicable FFF a fully completed financing applications, together with all documents and related diligence ancillary thereto, no later than the Floorplan Application Date.

    Notwithstanding the deadlines and Sale milestones set forth herein, ***failure to timely submit any floorplan financing application may significantly impact the timing of each applicable FFFs approval process***.

All parties reserve all rights. The Debtors and each FFF shall be entitled to seek relief from the Bankruptcy Court on an emergency basis against any party who allegedly fails to comply with these provisions.

Each FFF or other financing source, including M&T, will treat each LOI party, Potential Bidder, and Bidder similarly during any due diligence process conducted with any LOI party, Potential Bidder, and Bidder.  Each FFF and M&T is prohibited from disclosing any details regarding any LOI, Potential Bidder, Bidder, or Bid, (including, without limitation, their name, bid, or financial information) to any other Bidder or Potential Bidder.

## BID DEADLINE

A Potential Bidder that desires to make a bid shall deliver electronic copies of its bid so as to be received no later than the Bid Deadline; *provided, that,* the Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline without further order of the Bankruptcy Court subject

to providing notice to all Potential Bidders. **The submission of a bid by the Bid Deadline shall constitute a binding and irrevocable offer to acquire the businesses or assets specified in such bid.** Notwithstanding anything to the contrary in these Bidding Procedures, any party that does not submit a bid by the Bid Deadline will not be allowed to (i) submit any offer after the Bid Deadline or (ii) participate in any Auction.

Bids should be submitted by email to the following representatives of the Debtors and the Committee:

| **Bonds Ellis Eppich Schafer Jones** | **TM Capital** | **Pachulski Stang Ziehl & Jones** |
|---|---|---|
| Joshua Eppich joshua@bondsellis.com Eric T. Haitz eric.haitz@bondsellis.com Ken Green ken.green@bondsellis.com | David Felts Managing Director of TM Capital dfelts@tmcapital.com | Bradford J. Sandler bsandler@pszjlaw.com Malhar Pagay mpagay@pszjlaw.com |

No later than 6:00 p.m. CT on the Bid Deadline, the Debtors shall provide true and correct unredacted copies of all Bids, along with identities and contact information for each Potential Bidder submitting such Bids to CASE, CNH Capital and each Consultation Party.

### RESTRUCTURING COMMITTEE

The Bankruptcy Court has approved the constitution of a committee consisting of David Rex (the Debtors' manager) ("Rex"), Michael Juniper (the Debtors' CRO) ("Juniper"), and Robin Phelan ("Phelan") (together, the "Restructuring Committee"). On behalf of the Debtors, the Restructuring Committee will review each Qualified Bid to determine, in consultation with the Consultation Parties, which Bids shall constitute Qualified Bid and which Qualified Bids shall constitute the Successful Bid (or Successful Bids, as applicable). The Restructuring Committee shall abide by the following protocols in reviewing and designating Successful Bid(s).

  a. *Each Bid will be reviewed by Juniper, Rex, and Phelan to determine, determine, in consultation with the Consultation Parties, whether such Bid constitutes a Qualified Bid.*

  b. *Consistent with the terms of the Bidding Procedures, Qualified Bids shall be entitled to participate in the Auction.*

  c. *At the conclusion of the Auction, Juniper, Rex, and Phelan shall determine, in consultation with the Consultation Parties, which Qualified Bid (or Qualified Bids, as applicable) constitutes the highest or otherwise best offer(s).*

  d. *If the determination of Juniper and the determination of Rex, after consultation with the Consultation Parties, identify the same Qualified Bid (or Qualified Bids, as applicable) as the highest or otherwise best*

9

*offer, such Qualified Bid (or Qualified Bids, as applicable) shall be announced as the Successful Bidder(s).*

e. *If, after consultation with the Consultation Parties, the determination of Juniper and the determination of Rex identify different Qualified Bids as the highest or otherwise best offer, then Phelan shall cast a determining, tie-break vote, and the resultant Qualified Bid (or Qualified Bids, as applicable) shall be announced as the Successful Bidder(s).*

f. *Phelan shall be entitled to participate in all discussions regarding the Bids and Qualified Bids and review Bids and Qualified Bids as received.*

g. *Robin Phelan shall be entitled to attend the Auction.*

h. *The Restructuring Committee shall also be authorized to consult with the Debtors' financial and legal advisors regarding the terms and structure of the Bids, and may request supplemental information from any Bidder.*

i. *The Committee, the Debtors' secured lenders (including CNH Capital) and CASE shall also be authorized to consult with the Debtors' financial and legal advisors regarding the terms and structure of the Bids, and may request supplemental information from any Bidder.*

j. *The Restructuring Committee shall also be required, in consultation with the Consultation Parties, to approve the designation of any Bid as a Stalking Horse Bid, and any Bidder as a Stalking Horse Bidder consistent with the procedures set forth above.*

k. *The Restructuring Committee shall act in a fiduciary capacity to the Debtors' estates and shall evaluate Bids solely on criteria set forth in the Bidding Procedures.*

### CONSULTATION PARTIES

Throughout the bidding process, the Debtors and their advisors will regularly and timely consult with Manufacturers and Traders Trust Company, and the advisors to any members of and advisors to the Official Committee of Unsecured Creditors (the "Committee" and each of the foregoing, a "Consultation Party," and collectively, the "Consultation Parties").[3] In the event that a Consultation Party (a) submits a Bid in the Auction, (b) supports a particular Bid through financial or consultative means, or (c) offers to or becomes aware of another Consultation Party's offer to

---

[3] For the avoidance of doubt, any instance requiring consultation with Consultation Parties or other disclosure to or approval from the Consultation Parties, the Debtors may discuss, disclose, or communicate with the advisors of the Committee and receive input, confirmation, consultation, or other materials from the Committee, notwithstanding the inclusion of the members of the Committee in the definition of the term Consultation Parties, it being understood that such members are included to ensure that such members to avoid any doubt that such members may have access to materials disclosed to the Committee.

10

provide financing in support of a Bid (a-c each a "Consultation Event"), then such party shall no longer be a Consultation Party with respect to the bidding and auction relating to the assets subject to such Bid until such time as such party withdraws such Bid.[4]

The Debtors shall promptly provide copies of all Bids (as defined below) and Non-Binding Letters of Intent received by the Debtors to the Consultation Parties, but in no event later than the next calendar day after such Bid or Non-Binding Letters of Intent are received; *provided, that,* the Consultation Parties must treat such Bids or Non-Binding Letters of Intent and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable Bidder; *provided, further*, that a Consultation Party may utilize and seek to file under seal any Bid or Non-Binding Letters of Intent for the purpose of seeking relief from the Court.

The Consultation Parties shall also be authorized to consult with the Debtors' financial and legal advisors regarding the terms and structure of the Bids, and may request that the Debtors and their advisors request supplemental information from any Bidder, with such supplemental material to be shared with such requesting Consultation Party.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures (i) shall not limit the Debtors' discretion—subject to the rights and powers of the Restructuring Committee—in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment and (ii) shall not limit any of the Consultation Parties' rights to object to or challenge the Debtors' decisions or actions that are subject to such consultation rights.  Further, for the avoidance of doubt, any rights that the Consultation Parties may have pursuant to the terms of other agreements, any orders of the Court, or the Bankruptcy Code are hereby reserved and shall not be affected by these Bidding Procedures or the Bidding Procedures Order.  All rights of the Consultation Parties with respect to the proposed Sale Transactions are fully reserved.

## FORM AND CONTENT OF QUALIFIED BID

A bid is a signed document from a Potential Bidder received by the Bid Deadline that identifies the purchaser by its legal name and any other party that will be participating in connection with the bid (a "Bid").  To constitute a "Qualified Bid" a Bid or Partial Bid must include, at a minimum, the following:[5]

---

[4]    Notwithstanding the foregoing, in the event that any Consultation Party or an affiliate of the foregoing offers to provide financing in support of a Bid, such Consultation Party shall continue to have consultation rights; *provided*, *that* such Consultation Party shall maintain information barriers between the persons responsible for making decisions related to the Chapter 11 Cases and the persons responsible for making decisions related to providing financing in support of a Bid.

[5]    The Debtors may, in consultation with the Consultation Parties, waive any of the following requirements for a Bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust Auction so long as any such waiver is not materially inconsistent with these Bidding Procedures *provided that* any such modifications shall not be inconsistent with the Bidding Procedures Order, or any other order of the Bankruptcy Court and shall not modify the consent or consultation rights of any party; *provided, further*, that any modifications shall not affect the rights of Qualified Bidders in respect of their Good Faith Deposits as set forth in these Bidding Procedures under the heading "Good Faith Deposit."

i. <u>Proposed Agreement</u>. Each Bid must include an executed agreement (the "<u>Proposed Agreement</u>") for the acquisition of all or some of the businesses or assets of the Debtors, marked with a redline to show all revisions made to the Applicable Stalking Horse Agreement distributed by the Debtors to Potential Bidders to constitute the Proposed Agreement. The Proposed Agreement shall:

    a. include a complete set of all disclosure schedules and exhibits thereto; and

    b. not condition the closing of the proposed Sale Transaction on the receipt of any third-party approvals (excluding such approvals required by the Bankruptcy Court or governmental and/or regulatory approvals).

ii. <u>Purchase Price; Form of Consideration; Cash Requirements; Assets; Assumed Liabilities; Credit Bid</u>. Each Bid must clearly set forth, as applicable:

    a. <u>Purchase Price</u>. Each Bid must clearly identify the purchase price to be paid (the "<u>Purchase Price</u>") and specify the aggregate amount of cash and other consideration being offered.

    b. <u>Cash Requirements</u>. Each Bid, including any Credit Bid must provide cash consideration sufficient to satisfy the payment of the Breakup Fee in cash in full (the "<u>Cash Consideration Amount</u>") and, with respect to any Credit Bid, must also pay, assume, or otherwise satisfy all obligations secured by senior liens on the applicable assets.

    c. <u>Assets / Business Purchased</u>: Each Bid must, in the Proposed Agreement, clearly identify the particular assets the Potential Bidder seeks to acquire from the Debtors and clearly state whether the Bidder intends to have the CASE Dealership Agreements assumed and assigned to such Bidder.

    d. <u>Assumed Liabilities</u>: Each Bid must clearly identify, in writing and as applicable, the particular liabilities, if any, the Bidder seeks to assume. For the avoidance of doubt, a Qualified Bid may include a bid for less than all or substantially all of the Debtors' liabilities.

    e. <u>Credit Bid</u>: Persons or entities holding a valid and perfected security interest in certain of the Debtors' assets that are not subject to a pending or sustained objection to such security interest's validity, extent or priority, may submit a credit bid (a "<u>Credit Bid</u>") on such assets, to the extent permitted by applicable law or any Bankruptcy Court orders, not to exceed the value of the secured claim asserted by such creditor on such collateral and subject to any applicable limitations set forth in any applicable intercreditor agreements (or comparable document) governing the relationship of such Potential Bidder and any other secured creditor of the Debtors; *provided, however,* that any such Credit Bid is subject to the Committee's right to challenge such security interest and the claim allegedly secured thereby.

iii.   <u>Unconditional Offer / Contingencies</u>.  A statement that the Bid is formal, binding, and unconditional, is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Successful Bid or a Back-Up Bid, or until the first business day after the close of the Sale Transactions.

iv.   <u>Proof of Financial Ability to Perform</u>.  Each Bid must contain such financial and other information that allows the Debtors, in consultation with the Consultation Parties, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale Transactions including, without limitation, ability to post replacement letters of credit, as applicable, and such financial and other information setting forth adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and the Potential Bidder's willingness to perform under any contracts that are assumed and assigned to such party.  Without limiting the foregoing, such information must include current financial statements or similar financial information certified to be true and correct as of the date thereof, proof of financing commitments if needed to consummate the transaction (not subject to, in the Debtors' reasonable business judgment in consultation with the Consultation Parties, any unreasonable conditions), contact information for verification of such information, including any financing sources, and any other information reasonably requested by the Debtors or the Consultation Parties necessary to demonstrate adequate assurance of future performance and to demonstrate that such Potential Bidder has the ability to consummate the Sale Transactions in a timely manner.

v.   <u>Designation of Contracts and Leases</u>.  Each Bid must identify with particularity each and every executory contract and unexpired lease that the Potential Bidder seeks the Debtors to assume and assign to such Potential Bidder under Bankruptcy Code section 365.

vi.   <u>Required Approvals</u>.  A statement or evidence (a) that the Potential Bidder has not conditioned their Bid on (i) obtaining financing, (ii) any internal approval, (iii) the outcome or review of unperformed due diligence, or (iv) regulatory contingencies (except as otherwise provided in this section), (b) that the Potential Bidder has made or will make in a timely manner all necessary filings under the Hart-Scott- Rodino Antitrust Improvements Act of 1976, as amended, or other antitrust laws, as applicable, and pay the fees associated with such filings; (c) identifying each governmental and regulatory third-party approvals required for the Potential Bidder to consummate the Applicable Sales Transaction, if any, and the Potential Bidder's plan and ability to obtain all requisite governmental, regulatory, or other third-party approvals and the proposed timing for the Potential Bidder to undertake the actions required to obtain such approvals; and (d) that the Bid is reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid or as the Back-Up Bid, within a time frame acceptable to the Debtors (in consultation with the Consultation Parties). A Potential Bidder further agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel, to discuss and explain such Potential Bidder's

13

regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable.

vii. <u>Disclosure of Identity and Corporate Authorization</u>. Each Bid must (a) fully disclose the identity of the Potential Bidder of each entity that will be bidding or otherwise participating in such Bid (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transactions), and the complete terms of any such participation, and (b) include evidence of corporate authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of a Bid, participation in the Auction, and closing of the transactions contemplated by the Potential Bidder's Proposed Agreement in accordance with the terms of the Bid and these Bidding Procedures.

viii. <u>No Entitlement to Expense Reimbursement or Other Amounts</u>. With the exception of any Stalking Horse Bid, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement, and a waiver of any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to the bidding process.

ix. <u>Disclosure of Connections</u>. Each Bid must fully disclose any connections or agreements with the Debtors, any other known Potential Bidder and/or any officer or director of the Debtors, and any of the Consultation Parties.

x. <u>Joint Bids</u>. The Debtors may, in consultation with the Consultation Parties, approve joint Bids in their sole and reasonable business judgment on a case-by-case basis.

xi. <u>Representations and Warranties</u>. Each Bid must include the following representations and warranties.

a. a statement that the Potential Bidder has had an opportunity to conduct, and has completed, any and all due diligence regarding the applicable business or asset prior to submitting its Bid;

b. a statement that the Potential Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the businesses or assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the businesses or assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Potential Bidder's Proposed Agreement ultimately accepted and executed by the Debtors;

c. a statement that the Potential Bidder agrees to serve as Back-Up Bidder, if its Bid is selected as the next highest or next best bid (or any combination

14

of Partial Bids comprising one Qualified Bid) after the Successful Bid with respect to the applicable business or asset;

d.  a statement that the Potential Bidder has not (a) engaged in any collusion with respect to the submission of any bid or the Auction, (b) coordinated or joined with any other party on a Bid or Bids (absent prior approval by the Debtors, in consultation with the Consultation Parties), (c) received any offers or incentives from any party, or is aware of any circumstances that would otherwise jeopardize the integrity of the Bidding Procures, Auction, or Sale process in any way, or (d) took any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain joint bids may be permitted as set forth herein;

e.  a statement that all proof of financial ability to consummate the applicable sale transaction in a timely manner and all information provided to support adequate assurance of future performance is true and correct;

f.  a statement that the Potential Bidder agrees to be bound by the terms of the Bidding Procedures.

xii.  A Potential Bidder must also accompany its Bid with:

a.  a cash deposit in an amount equal to ten percent (10%) of the Bid (a "<u>Good Faith Deposit</u>");

b.  the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the Bid submitted by the Potential Bidder; and

c.  a covenant to cooperate with the Debtors and the Consultation Parties to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements.

## **GOOD FAITH DEPOSIT**

A Good Faith Deposit must be deposited, prior to the Bid Deadline, with an escrow agent selected by the Debtors (the "<u>Escrow Agent</u>") pursuant to a customary and reasonable escrow agreement to be provided by the Debtors. To the extent a Qualified Bid is modified before, during, or after the Auction, the Debtors reserve the right, in consultation with the Consultation Parties, to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the Purchase Price. If a Qualified Bidder is required to increase its Good Faith Deposit, its status as a Qualified Bidder shall be suspended pending satisfaction of such adjustment. For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any Good Faith Deposit by a Qualified Bidder shall only be for purposes of this process. No party, including any prepetition lenders or postpetition lenders have or shall have any lien, claim, or right with respect to the Good Faith Deposit, and such funds shall

not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bidding Procedures.

### REVIEW OF BIDS; DESIGNATION OF QUALIFIED BIDS

The Debtors, in consultation with the Consultation Parties, will evaluate Bids that are timely submitted and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate in the exercise of their reasonable business judgment, based upon the Debtors' evaluation of the content of each Bid.

A Bid that is reasonably determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth herein will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid (including the Stalking Horse Bids) will be considered a "Qualified Bidder."

By no later than **one (1) day prior to the Auction** (the "Qualified Bid Deadline"), the Debtors shall determine, in their reasonable business judgment, and in consultation with CASE, CNH Capital and the Consultation Parties, which of the Bids received by the Bid Deadline qualifies as a Qualified Bid. The Debtors shall notify each Bidder who submits a Qualified Bid of its status as a Qualified Bidder by the Qualified Bid Deadline.

To the extent a Qualified Bidder is not already in communication with a relevant OEM and/or FFF regarding their Bid, immediately thereafter, such OEM and/or FFF shall be permitted to communicate directly with any Qualified Bidder, specifically including (without limitation) in-person meetings with such parties submitting Qualified Bids indicating interest in becoming a an OEM dealer. Each relevant OEM and FFF shall be permitted to request additional information and documentation from any Qualified Bidder for the purpose of evaluating such party's qualifications to serve as an OEM dealer and qualify for floorplan financing from an applicable FFF, specifically including (without limitation) a Dealership Application Package. Notwithstanding the foregoing provisions of this paragraph, all parties shall be subject to the limitations and restrictions of OEM Discussions and FFF Discussions as set forth in the Bidding Procedures sections titled OEM Discussions and FFF Discussions, respectively.

In evaluating the Bids, the Debtors may take into consideration the following non-exhaustive factors:

1.   the amount of the purchase price and Credit Bid, as applicable, set forth in the Bid (*provided, that,* for purposes of evaluating competing bids, and except with respect to the requirement that each Bid must provide the Cash Consideration Amount, every dollar of a Credit Bid shall be treated the same as a dollar from a cash or other non-cash Bid, and a Credit Bid shall not be considered inferior to a comparable cash or other non-cash Bid because it is a Credit Bid);

2.   the assets and liabilities excluded from the Bid and any executory contracts or leases or other liabilities proposed to be assumed or rejected;

3.      the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, including, without limitation, the impact on the size of the resulting claims against the estates and the recovery on such claims;

4.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including replacement letters of credit;

5.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals;

6.      the impact on employees, employee claims against the Debtors, vendors, and vendor claims; and

7.      any other factors the Debtors, in consultation with the Consultation Parties, may deem relevant, consistent with their fiduciary duties.

A Bid that contemplates the liquidation of some or all the Debtors' businesses or assets shall not be disqualified from being a Qualified Bid solely for that reason. The Debtors reserve the right, after consulting with the Consultation Parties, to work with any Potential Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Without the written consent of the Debtors, after consultation with the Consultation Parties, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Purchase Price or otherwise improve the terms of the Qualified Bid for the Debtors during the period that such Qualified Bid remains binding as specified herein; *provided, that,* any Qualified Bid may be improved at the Auction as set forth in these Bidding Procedures.

Subject to the right of the Committee to challenge any lien on any assets of the Debtors' estates and claims purportedly secured thereby, terms of the Bidding Procedures Order and these Bidding Procedures, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates and the right under applicable nonbankruptcy law to credit bid claims secured by such liens, shall have the right to credit bid all or a portion of the value of such Qualified Bidder's claims pursuant to section 363(k) of the Bankruptcy Code with respect to the collateral by which such Qualified Bidder's claim is secured. Any Qualified Bidder intending to credit bid all or a portion of the value of such Qualified Bidder's claim shall provide notice thereof to the Debtors and the Consultation Parties at least two (2) business days prior to the Bid Deadline.

## AUCTION PROCEDURES

If the Debtors receive two or more Qualified Bids with respect to the Debtors' assets, the Debtors shall conduct the Auction on ●, 2025, **beginning at a time to be announced at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP (Fort Worth, Texas), and (ii) virtually, pursuant to procedures to be announced to bidders, or such other later date as may be determined by the Debtors in consultation with the Consultation Parties and upon notice to all parties in**

17

**interest**. Only Qualified Bidders will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in good faith and in consultation with the Consultation Parties. In addition, only the professionals and/or other representatives of the Qualified Bidders, the Debtors, CASE, CNH Capital and the Consultation Parties shall be permitted to attend and observe the Auction.

The following auction rules shall apply to the Auction to promote a spirited and robust auction (the "Auction Rules"). All bids in the Auction will be made and received on an open basis, and all other Qualified Bidders participating in the Auction will be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder placing a bid at the Auction will be fully disclosed to all other bidders participating in the Auction and that all material terms of a bid submitted in response to any successive bids made at the Auction (each, an "Overbid") will be disclosed to all other Qualified Bidders participating in the Auction. Each Qualified Bidder will be permitted what the Debtors, in consultation with the Consultation Parties, reasonably determine to be an appropriate amount of time to respond to the previous bid at the Auction. The Auction will be conducted openly and shall be transcribed or recorded. The starting bid (the "Starting Bid") shall be the highest or best Qualified Bid, as determined by the Debtors in consultation with the Consultation Parties. The Debtors shall notify all Qualified Bidders at least twenty-four (24) hours prior to the Auction what Qualified Bid or combination of Qualified Bids will be the Starting Bid. If the Starting Bid includes non-cash consideration, the Debtors shall notify all Qualified Bidders of the value allocated to such non-cash consideration at least two (2) or more business days prior to the Auction.

The Debtors shall notify all Qualified Bidders of any proposed amendments or modifications to the Auction Rules at least twenty-four (24) hours prior to the Auction. Pursuant to 18 U.S.C. §§ 156 and 157, bidders and their representatives may not communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction. All parties are prohibited from (i) engaging in any collusion with respect to the submission of any Bid or participating in the Auction, (ii) coordinating or joining with any other party on a Bid or Bids, or (iii) taking any other action to prevent a transparent and competitive auction process; *provided*, *that*, certain Joint Bids may be permitted as set forth herein. Each Qualified Bidder participating in the Auction shall confirm in writing and on the record at the Auction that (i) it has not engaged in any of the foregoing prohibited actions and (ii) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as a Successful Bidder.

All parties attending the Auction must keep the proceedings and results of the Auction confidential until the Debtors have closed the Auction; *provided, that,* parties may speak with clients or parties necessary to place their Bid or increase it so long as such individuals are advised of the confidentiality restriction; *provided, further,* that parties may disclose the proceedings and results of the Auction for the purpose of seeking relief from the Court.

To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' assets/businesses (each, a "Sub-Auction") at any Auction and a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of assets/businesses that may include specific assets or

18

businesses which were the subject of an earlier Sub-Auction. If one or more Partial Bids(s) for acquiring only certain of the Debtors' assets or businesses are determined to be Qualified Bids, then the Debtors shall first conduct a Sub-Auction for each of these assets or businesses that has at least one Qualified Bid pursuant to the Auctions rules. The Debtors may, in the exercise of their reasonable business judgment consistent with the rights and powers of the Restructuring Committee, in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "Reserve Sub-Auction Bid" and the bidder submitting such bid, a "Reserve Sub-Auction Bidder"). The Debtors may also, in the exercise of their reasonable business judgement consistent with the rights and powers of the Restructuring Committee, identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction as a back-up bid (each, a "Back-Up Sub-Auction Bid" and the bidder submitting such bid, a "Back-Up Sub-Auction Bidder"). After the designation of any Reserve Sub-Auction Bid, the Debtors shall conduct an Auction for the Debtors' businesses and assets on a consolidated or semi- consolidated basis pursuant to the Auction Rules. If, upon the completion of such Auction, the Debtors, in the exercise of their reasonable business judgment consistent with the rights and powers of the Restructuring Committee, in consultation with the other Consultation Parties, determine that pursuing a Sale Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in a higher or otherwise better value of the Debtors' businesses than pursuing a Sale Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' assets or businesses on a consolidated or semi-consolidated basis, then the Debtors may declare the Reserve Sub-Auction Bid(s) as Successful Bid(s) (and the Reserve Sub-Auction Bidder(s) as Successful Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)).

The Debtors may, in the exercise of their business judgment consistent with the rights and powers of the Restructuring Committee in consultation with the other Consultation Parties, identify the highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as the successful bid for the respective business or assets to be acquired (each, a "Successful Bid" and the bidder submitting such bid, a "Successful Bidder"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid (or any combination of Partial Bids comprising one Qualified Bid, as specified above) as a back-up bid (a "Back-Up Bid" and the bidder submitting such bid, a "Back-Up Bidder").

Notwithstanding anything herein to the contrary, the Debtors will conduct the Auction on an open basis and shall not require any Qualified Bidders to submit their last and final bids on a "blind" basis. As such, in the Auction process, all Qualified Bidders shall have the right, but not direction, in their sole and absolute discretion, to overbid bids made and alternative transactions proposed by any other Qualified Bidder. Bid increments and topping bid requirements shall be determined by the Debtors in their reasonable business judgment, upon consultation with the Consultation Parties and subject to the consent of M&T.

Within one (1) business day after the Auction, or as soon as reasonably practicable thereafter, each Successful Bidder shall (i) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid such Successful Bidder submitted and (ii) unless otherwise agreed in the purchase agreement between the Debtors and a Successful Bidder, submit by transfer of immediately available funds to an account identified by the Debtors any amount required to increase

19

the Successful Bidder's Good Faith Deposit to an amount equal to ten percent (10%) of the Purchase Price contained in the Successful Bid, if the amount of the Good Faith Deposit previously delivered by the Successful Bidder is less than such amount.  For the avoidance of doubt, and notwithstanding anything to the contrary in these Bidding Procedures or any Court order to the contrary, any such increase to the Good Faith Deposit by a Qualified Bidder to such designated account shall only be for purposes of this process.  No party, including any prepetition lenders, or postpetition lenders have or shall have any lien, claim, or right with respect to such funds which shall not be available for distribution to the Debtors' creditors, unless and until such funds become property of the Debtors' estates in accordance with the terms of these Bidding Procedures; *provided*, for the avoidance of doubt, that upon the Debtors' estates obtaining a right to such proceeds, then any prepetition or postpetition creditors' rights, claim, or lien attaches to such proceeds consistent with their pre- or post-petition rights, as applicable.  A Successful Bid may not be assigned to any party without the consent of the Debtors which consent shall not be unreasonably withheld, conditioned, or delayed, and in consultation with the other Consultation Parties. In the event CASE has provided its consent to the assignment of any CASE contracts to any Successful Bidder under 11 U.S.C. 365, then there shall be no subsequent assignment of such approved Successful Bid to a different party without CASE's prior written consent in compliance with the terms of any such CASE contracts and applicable law.

At any time before the designation of a Successful Bid and Back-Up Bid, if any, the Debtors, in consultation with the Consultation Parties, reserve the right to and may reject such Qualified Bid(s) if such Qualified Bid(s), in the Debtors' reasonable business judgment, is/are: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, or the terms and conditions of the applicable sale transaction; or (iii) contrary to the best interests of the Debtors and their estates.

## POST-AUCTION PROCESS

Within one (1) day after the conclusion of the Auction, or as soon as reasonably practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s).

Within two (2) business days after the Auction, the Debtors shall direct the Escrow Agent to return the Good Faith Deposit of any bidder, together with interest accrued thereon, who is not declared a Successful Bidder or Back-Up Bidder.  Upon the authorized return of any such Good Faith Deposit, the bid of such Potential Bidder, Qualified Bidder or Back-Up Bidder, as applicable, shall be deemed revoked and no longer enforceable.

Each Successful Bidder's Good Faith Deposit shall be applied against the cash portion of the purchase price of such bidder's Successful Bid upon the consummation of the Sale Transactions.

In addition to the foregoing, the Good Faith Deposit of a Qualified Bidder will be forfeited to the Debtors if (i) the Qualified Bidder attempts to modify, amend, or withdraw its Qualified Bid, except as permitted herein, during the time the Qualified Bid remains binding and irrevocable or (ii) the Qualified Bidder is selected as a Successful Bidder or Back-Up Bidder and refuses or fails to enter into the required definitive documentation or to consummate the Sale Transactions according to these Bidding Procedures.  In addition to receipt of a Good Faith Deposit, the Debtors

20

specifically reserve the right to seek all additional available damages from a defaulting Successful Bidder.

## STALKING HORSE BIDDERS AND BID PROTECTIONS

The Debtors shall be authorized, but not obligated, in an exercise of their business judgment consistent with the rights and powers of the Restructuring Committee, after consultation with the Consultation Parties and subject to the notice requirements and objection procedures set forth in the Bidding Procedures Order, to: (a) select one or more Potential Bidders to act as stalking horse bidders in connection with a Sale (each, a "Stalking Horse Bidder") and enter into a purchase agreement with respect to a Sale with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, offer, after consultation with the Consultation Parties or as otherwise approved by the Court, (i) a breakup fee, payable in the event the Debtors consummate a transaction with a Bidder other than the Stalking Horse Bidder for the assets sought to be purchased through the Stalking Horse Bid (the "Breakup Fee"), (ii) to reimburse reasonable and documented out-of-pocket fees and expenses of the Stalking Horse Bidder incurred in negotiating the Stalking Horse Agreement and investigating the Debtors and the applicable Assets (the "Expense Reimbursement") and/or (iii) to provide other appropriate and customary protections (together with the Breakup Fee and the Expense Reimbursement, the "Bid Protections"); *provided that*, with respect to any particular Stalking Horse Agreement, the total Bid Protections offered shall not exceed (A) 2.5% of the cash purchase price contemplated by such Stalking Horse Agreement for the Breakup Fee plus (B) $50,000 for any Expense Reimbursement.

No later than one (1) business day after selecting a Stalking Horse Bidder, the Debtors shall file with the Court and serve a notice (a "Stalking Horse Notice") (a) identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the purchase price and Assets subject to such Stalking Horse Bid), and the amount and terms of any Bid Protections offered to the Stalking Horse Bidder, and (b) attaching a copy of the relevant Stalking Horse Agreement. Any objection to the designation of the Stalking Horse Bidder or to the Bid Protections set forth in the Stalking Horse Notice and Stalking Horse Agreement (a "Stalking Horse Objection") shall be filed no later than the date that is four (4) business days after the date of service of the applicable Stalking Horse Notice. If a timely Stalking Horse Objection is filed, the proposed designation of the Stalking Horse Bidder and Bid Protections provided for under such Stalking Horse Agreement shall not be deemed approved unless approved by separate order of the Court. If no Stalking Horse Objection is timely filed and served with respect to a Stalking Horse Bid, the Bid Protections with respect to such Stalking Horse Bidder shall be deemed approved without further order of the Court upon the expiration of four (4) business days after service of the Stalking Horse Notice, and shall be payable in accordance with, and subject to the terms of, the applicable Stalking Horse Agreement.

No later than 6:00 p.m. CT on the date the Debtors select one or more Stalking Horse Bidder(s), the Debtors shall provide to each relevant OEM and FFF the identity for each Stalking Horse Bidder. To the extent a Qualified Bidder is not already in communication with a relevant OEM and/or FFF regarding their Bid, immediately thereafter, such OEM and/or FFF shall be permitted to communicate directly with any Qualified Bidder, specifically including (without limitation) in-person meetings with such parties submitting Qualified Bids indicating interest in becoming a an

OEM dealer. Each relevant OEM and FFF shall be permitted to request additional information and documentation from any Qualified Bidder for the purpose of evaluating such party's qualifications to serve as an OEM dealer and qualify for floorplan financing from an applicable FFF, specifically including (without limitation) a Dealership Application Package. Notwithstanding the foregoing provisions of this paragraph, all parties shall be subject to the limitations and restrictions of OEM Discussions and FFF Discussions as set forth in the Bidding Procedures sections titled <u>OEM Discussions</u> and <u>FFF Discussions</u>, respectively.

## NOTICES REGARDING ASSUMPTION AND ASSIGNMENT

The Debtors shall provide all notices regarding the proposed assumption and assignment of contracts and leases in accordance with the Assumption and Assignment Procedures included in the Bidding Procedures Order.

## SALE OBJECTIONS AND HEARING

Objections to the Sale Transactions (each, a "<u>Sale Objection</u>"), shall: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and if applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection (if applicable); (iv) conform to the Bankruptcy Rules and the Local Rules; (v) be filed with the Bankruptcy Court; and (vi) be served upon the Debtors, the Consultation Parties, the Successful Bidder(s), and the United States Trustee by the Sale Objection Deadline; *provided, that,* the Debtors may extend the Sale Objection Deadline, as the Debtors deem appropriate in the exercise of their reasonable business judgment and in consultation with the Consultation Parties and upon notice to each Successful Bidder(s). If a timely Sale Objection cannot otherwise be resolved by the parties, such objection shall be heard by the Bankruptcy Court at the applicable Sale Hearing.

An appropriate representative of each Successful Bidder shall appear at the applicable Sale Hearing and be prepared, if necessary, to have such representative(s) testify in support of a Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned to the Successful Bidder as part of the proposed transaction.

Any party who fails to timely file with the Court a Sale Objection will be forever barred from asserting any objection to the applicable sale, or to the consummation and performance of a sale transaction contemplated by a purchase agreement between the Debtors and a Successful Bidder, including the transfer of the Debtors' business to a Successful Bidder, free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code. Failure to object shall constitute consent for the purposes of section 363(f) of the Bankruptcy Code. Any objection filed after the Sale Objection Deadline will not be considered by the Court.

## CONSENT TO JURISDICTION AND AUTHORITY AS CONDITION TO BIDDING

All Potential Bidders that participate in the bidding process shall be deemed to have (i) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to these Bidding Procedures, the bid process, the Auction, the

applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions; and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the applicable Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale Transactions if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

**EXHIBIT 2**

**"Sale Notice"**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| | § | **Case No. 25-90010** |
| **GROFF TRACTOR MID ATLANTIC,** | § | |
| **LLC, *et al.*** | § | **(Jointly Administered)** |
| | § | |
| | § | |
| **Debtors.[1]** | § | |
| | § | |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On October 30, 2025, Groff Tractor Mid Atlantic, LLC ("GTMA"), Dealer 2023 LLC ("Dealer") and Groff Tractor Holdings, LLC ("Holdings," and collectively with GTMA and Dealer, the "Debtors") filed with the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") a motion (Docket No 100) (the "Motion") for the entry of an order (the "Bidding Procedures Order")[2] (i) approving (a) the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**; (b) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "Bid Deadline"), authorizing and scheduling an auction (the "Auction"), authorizing and scheduling hearings with respect to the approval of a proposed sale transaction (the applicable "Sale

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: Groff Tractor Mid Atlantic, LLC (7629), Dealer 2023, LLC (3275), and Groff Tractor Holdings, LLC (0486), and the location of the service address for the Debtors is: 1460 Main Street, Suite 200, Southlake, TX 76092.

[2]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

1

Hearing"); (c) authorizing and approving the form and manner of the Sale Notice; (d) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); (e) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures"); (ii) authorizing the sale of certain of the Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.

2.      On [●], 2024, the Bankruptcy Court entered the Bidding Procedures Order (Docket No. [●]).

**IMPORTANT DATES AND DEADLINES**

| Key Event | Deadline |
|---|---|
| Deadline to file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties | **November 14, 2025** |
| Deadline to Provide Draft Form of Purchase Agreement in Dataroom | **November 17, 2025** |
| Deadline to Submit Non-Binding Letter of Intent (the "LOI Deadline") | **November 25, 2025** |
| Suggested Deadline for OEM LOI parties to return Dealership Application Packages (the "OEM Dealer Application Date")<br><br>Suggested Deadline for LOI parties to return Floorplan Applications (the "FFF Application Date") | **November 25, 2025** |
| Deadline to Designate Stalking Horse Bid(s) | **December 8, 2025** |
| Deadline to Object to Designation of any Stalking Horse Bidder or Grant of Bid Protections | **Four (4) business days following filing of the applicable Stalking Horse Notice** |
| Deadline to Object to Cure Costs; Rights Objection; Assignment Objection | **December 1, 2025** |
| Deadline to Submit Bids ("Bid Deadline") | **December 14, 2025 at 5:00 p.m. (CT)** |

2

| | |
|---|---|
| Deadline to Remit Deposit for Bids | **December 15, 2025 at 12:00 p.m. (CT)** |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | **December 15, 2025** |
| Auction, if necessary, to be conducted at (i) the offices of Bonds Ellis Eppich Schafer Jones LLP (Fort Worth, Texas), and (ii) virtually, pursuant to procedures to be announced to bidders | **December 16, 2025 (at a time to be announced)** |
| Deadline to File Notice of (a) Successful Bid(s) and Back-Up Bid(s) and (b) Identity of Successful Bidder(s) and Back-Up Bidder(s) | **As soon as reasonably possible following conclusion of Auction** |
| Deadline to File Objections to (a) Sale Transactions (other than the Applicable Sale Transaction) and (b) Adequate Assurance of Future Performance ("Sale Objection Deadline") | **December 17, 2025 at 5:00 p.m. CT** |
| Sale Hearing | **December 18, 2025 at 10:00 a.m. CT** |
| Outside Closing Date | **January 9, 2026** |

## NOTICE TO HOLDERS OF CONSENT RIGHTS, PREFERENTIAL PURCHASE RIGHTS AND SIMILAR RIGHTS OF SALE OBJECTION DEADLINE

3. The Debtors will assign to a Successful Bidder, pursuant to an asset purchase agreement, certain contracts, agreements, leases and other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), *free and clear of all liens, claims, interests, and encumbrances* (other than certain permitted post-closing liabilities, liens, or as otherwise provided in the applicable purchase agreement). Subject to approval by the Bankruptcy Court, if any party objects to such assignment, including any objection based on any alleged approval or consent right or anti- assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right"), then such party must file with the Bankruptcy Court, via ECF, an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than the Sale Objection Deadline.

4.      In addition, the Debtors will assign to a Successful Bidder, pursuant to an asset purchase agreement, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right"). Subject to approval by the Bankruptcy Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Bankruptcy Court, via ECF, an objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than the Sale Objection Deadline.

5.      IF A PARTY FILES AN ASSIGNMENT OBJECTION OR RIGHTS OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH ABOVE, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, SUCH OBJECTION WILL BE HEARD BY THE BANKRUPTCY COURT AT THE SALE HEARING.

6.      **Any person failing to timely file an Assignment Objection or Rights Objection, as applicable, will be (i) forever barred from objecting to the transfer, sale, assumption, and/or assignment of the Debtors' right, title, and interest in, to and under the assets to be**

**sold, assumed, and/or assigned in connection with a Sale Transaction, free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than certain permitted liens), and from asserting any alleged Preferential Purchase Rights with respect to a Sale Transaction, and (ii) deemed to consent to and approve the transfer, sale, and assumption and/or assignment of the Debtors' right, title, and interest in, to and under such assets free and clear of all liens, claims, interests, and encumbrances, including Consent Rights and Preferential Purchase Rights (other than certain permitted liens), regardless of whether such consent must be in writing pursuant to the terms of any contract, lease, or other agreement.**

7.      If any person files an Assignment Objection or Rights Objection in accordance herewith, the Debtors and other parties in interest will have the opportunity to object to any alleged rights asserted by such person by filing a response to the Assignment Objection or Rights Objection, as applicable (and serving such response on the objecting party) at any time prior to the Sale Hearing. Upon the filing of such response to such objection, any rights asserted will be deemed to be disputed and the Debtors will be entitled to assert that a bona fide dispute exists as to such rights asserted. Nothing herein will be deemed a waiver of any rights of the Debtors or any other parties in interest to contest any rights asserted by any person in such objections, and all such rights of the Debtors are expressly preserved.

8.      In addition, pursuant to an asset purchase agreement and the Bidding Procedures Order, the Debtors shall assume and assign contracts and leases to a Successful Bidder in accordance with the deadline provided in the applicable Stalking Horse Agreement (generally, up to ninety (90) days after closing). Any Assignment Objection or Rights Objection shall be filed within seven (7) days of notice thereof.

5

**ADDITIONAL INFORMATION**

9.      Any party interested in submitting a bid should contact David Felts, Managing Director of TM Capital (dfelts@tmcapital.com). Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent and administrative advisor, Epiq, located at https://dm.epiq11.com/gtm.

**RESERVATION OF RIGHTS**

10.      Except as otherwise set forth herein, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, to modify the Bidding Procedures; waive terms and conditions set forth herein with respect to all Potential Bidders; extend the deadlines set forth herein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth herein; *provided*, *that*, any modifications shall not be inconsistent with the Bidding Procedures Order or any other order of the Bankruptcy Court and shall not modify the consent or consultation rights of any party, including the Restructuring Committee.  Subject to the foregoing, the Debtors may, in consultation with the Consultation Parties, provide reasonable accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' businesses, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order.  All parties reserve their rights to seek Bankruptcy Court relief, including on an expedited basis, with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).  The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

11. **FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

12. **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINES SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTIONS, THE PROPOSED SALE TRANSACTIONS, OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

Dated: [●], 2025

Respectfully submitted,

/s/ *[draft]*
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua Eppich    (Texas Bar No. 24050567)
Eric T. Haitz     (Texas Bar No. 24101851)
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

-and-

Ken Green      (Texas Bar No. 24036677)
402 Heights Blvd
Houston, Texas 77007
(713) 335-4990 telephone
(716) 335-4991 facsimile

PROPOSED COUNSEL FOR THE DEBTORS

7

## CERTIFICATE OF SERVICE

I certify that on [●], 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system.

/s/ *[draft]*
Eric T. Haitz

**EXHIBIT 3**

**"Cure Notice"**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| | § | **Case No. 25-90010** |
| **GROFF TRACTOR MID ATLANTIC,** | § | |
| **LLC, *et al.*** | § | **(Jointly Administered)** |
| | § | |
| | § | |
| **Debtors.**[1] | § | |
| | § | |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES
<u>IN CONNECTION WITH SALE</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On October 30, 2025, Groff Tractor Mid Atlantic, LLC ("<u>GTMA</u>"), Dealer 2023

LLC ("<u>Dealer</u>") and Groff Tractor Holdings, LLC ("<u>Holdings</u>," and collectively with GTMA and

Dealer, the "<u>Debtors</u>") filed with the United States Bankruptcy Court for the Northern District of

Texas (the "<u>Bankruptcy Court</u>") a motion (Docket No. 100) (the "<u>Motion</u>") for the entry of an

order (the "<u>Bidding Procedures Order</u>")[2] (i) approving (a) the Bidding Procedures, substantially in

the form attached to the Bidding Procedures Order as **<u>Exhibit 1</u>**; (b) setting the deadline for

potential bidders to submit a proposal to purchase the Debtors' businesses or assets (the "<u>Bid</u>

<u>Deadline</u>"), authorizing and scheduling an auction (the "<u>Auction</u>"), authorizing and scheduling

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: Groff Tractor Mid Atlantic, LLC (7629), Dealer 2023, LLC (3275), and Groff Tractor Holdings, LLC (0486), and the location of the service address for the Debtors is: 1460 Main Street, Suite 200, Southlake, TX 76092.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion, Bidding Procedures Order, and the Bidding Procedures, as applicable. Any summary of the Bidding Procedures Order or the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

hearings with respect to the approval of a proposed sale transaction (the applicable "Sale Hearing"); (c) authorizing and approving the form and manner of the Sale Notice; (d) authorizing and approving the Cure Notice to Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "Cure Costs"); (e) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "Assumption and Assignment Procedures" and such contracts "Assigned Contracts"); (ii) authorizing the sale of certain of the Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code following the sale process and completion of the Auction (collectively, the "Sale Transactions"); and (iii) granting related relief.

2.       Each of the Assigned Contracts that may be assumed and assigned in connection with the Sale Transactions with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A**.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

3.       The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

4.       Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease.

5. If (a) the Debtors identify (i) additional contracts or leases to be assumed and assigned to a Successful Bidder or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) a Successful Bidder designates any additional contracts or leases not previously included on this Cure Notice for assumption and assignment, the Debtors shall promptly file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice. The Debtors shall assume and assign contracts and leases to a Successful Bidder in accordance with the deadline provided in the applicable Stalking Horse Agreement (generally, up to ninety (90) days after closing).

## **OBJECTIONS**

### *A.* *Cure Objections*

6. Any objection to the proposed assumption, assignment, or potential designation of an Assigned Contract identified on **Exhibit A**, the subject of which objection is the Debtors' proposed Cure Costs (a "Cure Objection") must:

(a) be in writing;

(b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection;

(d) conform to the Bankruptcy Rules and the Local Rules; and

(e) be filed with the Court.

7. IF NO OBJECTION IS TIMELY RECEIVED WITH RESPECT TO AN ASSIGNED CONTRACT (THE "CONTRACT OBJECTION"): (I) THE CONTRACT COUNTERPARTY TO SUCH ASSIGNED CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION BY THE DEBTORS AND ASSIGNMENT TO

3

SUCCESSFUL BIDDER OF THE ASSIGNED CONTRACT, AND BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO SUCH ASSUMPTION AND ASSIGNMENT (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE BY THE SUCCESSFUL BIDDER); (II) ANY AND ALL DEFAULTS UNDER THE ASSIGNED CONTRACT AND ANY AND ALL PECUNIARY LOSSES RELATED THERETO SHALL BE DEEMED CURED AND COMPENSATED PURSUANT TO BANKRUPTCY CODE SECTION 365(B)(1)(A) AND UPON PAYMENT OF THE CURE COSTS SET FORTH IN THE CURE NOTICE FOR SUCH ASSIGNED CONTRACT; AND (III) THE CONTRACT COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OTHER CLAIMS RELATED TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS AND THEIR ESTATES OR THE SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THE THEM, THAT EXISTED PRIOR TO THE ENTRY OF THE ORDER RESOLVING SUCH CONTRACT OBJECTION AND ANY SALE ORDER.

**B.     *Adequate Assurance Objections***

8.     Objections to the provision of adequate assurance of future performance (each, an "Adequate Assurance Objection") with respect to the assumption and assignment of any Assigned Contracts identified on **Exhibit A** to a Successful Bidder must be filed in accordance with the preceding paragraphs 6-7 by **December 1, 2025** for all Sale Transactions.

9.     IF NO TIMELY ADEQUATE ASSURANCE OBJECTION IS FILED WITH RESPECT TO AN ASSIGNED CONTRACT OR A SUCCESSFUL BIDDER, THE DEBTORS WILL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE FOR SUCH ASSIGNED CONTRACT IN ACCORDANCE WITH SECTION

4

365(F)(2)(B) OF THE BANKRUPTCY CODE AND THE CONTRACT COUNTERPARTY SHALL FOREVER BE BARRED FROM ASSERTING AGAINST THE DEBTORS, THEIR ESTATES, AND A SUCCESSFUL BIDDER, ANY ADDITIONAL OBLIGATION TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE.  FURTHER, IF NO TIMELY CURE OBJECTION OR ADEQUATE ASSURANCE OBJECTION IS FILED WITH RESPECT TO AN ASSIGNED CONTRACT, THE RELEVANT CONTRACT COUNTERPARTY SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT TO A SUCCESSFUL BIDDER.

## C.      *Rights Objection*

10.      If any party objects to assignment of a contract, including any objection based on any alleged approval or consent right or anti-assignment provision contained in or applicable to any contract, lease, or other agreement (a "Consent Right"), then such party must file with the Bankruptcy Court, via ECF, an objection identifying (i) the contract(s), lease(s), or other agreement(s), (ii) the basis for objecting to the assignment of such contract(s), lease(s), or other agreement(s), and (iii) all supporting documentation (each, an "Assignment Objection"), no later than December 1, 2025.

11.      In addition, the Debtors may assign to a Successful Bidder, pursuant to an asset purchase agreement and Sale Order, certain contracts, agreements, leases or other assets, including assets constituting real property interests (including all fee surface interests in land, surface leases, easements, rights of way, servitudes, licenses, franchises, road, railroad, and other surface use permits or agreements), free and clear of any preferential purchase rights, rights of first refusal, drag-along rights, tag-along rights, and other similar rights, if any, that are applicable to the transfer of the Debtors' assets in connection with a Sale Transaction (each a "Preferential Purchase Right").

5

Subject to approval by the Bankruptcy Court, if any purported holder of a Preferential Purchase Right objects to such transfer, including on account of any alleged Preferential Purchase Right contained in or applicable to any contract, lease, or other agreement, then such holder must file with the Bankruptcy Court, via ECF, an objection identifying (i) the assets subject to such Preferential Purchase Right(s), (ii) the applicable agreement, document, or statute giving rise to such Preferential Purchase Right(s), (iii) the portion of the agreement, document, or statute giving rise to such Preferential Purchase Right(s), and (iv) all other supporting documentation (a "Rights Objection"), no later than **December 1, 2025**.

12.     If a party files an Assignment Objection or Rights Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection will be heard by the Bankruptcy Court at the Sale Hearing or such other scheduled hearing.

## SALE HEARING

13.     The Debtors will seek authority to assume and assign the Assigned Contracts at the applicable hearing to approve the Sale Transactions (the applicable "Sale Hearing") that is scheduled to commence on **December 18, 2025 at 10:00 a.m. (prevailing Central Time)**, before the Honorable Edward L. Morris at the Bankruptcy Court: Room 204, U.S. Courthouse, 501 W. Tenth Street, Fort Worth, Texas 76102.  Objections, if any, that cannot otherwise be resolved by the parties, will be heard at a hearing scheduled prior to any scheduled closing of the Sale Transactions, as determined by the Debtors in accordance with the Bidding Procedures Order.

## ADDITIONAL INFORMATION

14. Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures

may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained

by the Debtors' claims and noticing agent, Epiq, located at https://dm.epiq11.com/gtm.

Dated: November 14, 2025          Respectfully submitted,

/s/ *[draft]*
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
Joshua Eppich    (Texas Bar No. 24050567)
Eric T. Haitz     (Texas Bar No. 24101851)
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: joshua@bondsellis.com
Email: eric.haitz@bondsellis.com

-and-

Ken Green      (Texas Bar No. 24036677)
402 Heights Blvd
Houston, Texas 77007
(713) 335-4990 telephone
(716) 335-4991 facsimile

PROPOSED COUNSEL FOR THE DEBTORS

## CERTIFICATE OF SERVICE

I certify that on November 14, 2025, a true and correct copy of the foregoing document was served via the Court's CM/ECF system.

/s/ *[draft]*
Eric T. Haitz

7